credit the plaintiff, as against the balance of $697.58, with the value of any services except such as have been proven in this action. This was declined, and the plaintiff duly excepted. The refusal to charge as requested deprived the defendant of the right to a conceded credit, if the jury believed that plaintiff held the title of 59 East 106th street in his own right, by permitting plaintiff in effect to extinguish the credit by a mere claim of services without proof of performance or value; and a new trial must therefore be ordered. The absence of a special finding by the jury on the main question whether the title was taken by plaintiff as trustee or not makes it impossible to ascertain how that issue was decided, and leaves the refusal to charge material error. Judgment reversed, new trial ordered, costs to appellant to abide the event. All concur.

(7 Misc. Rep. 257.)

## MT. MORRIS ELECTRIC–LIGHT CO. v. HORSE & CATTLE SHOW.

(City Court of New York, General Term.   February 19, 1894.)

APPEAL—WEIGHT OF EVIDENCE.
  A verdict rendered on conflicting evidence, under a charge to which no exception is taken, will not be disturbed on appeal.

Appeal from trial term.

Action by the Mount Morris Electric-Light Company against the Horse & Cattle Show. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before EHRLICH, C. J., and VAN WYCK and FITZSIMONS, JJ.

Jay & Candler, for appellant.
Foster, Hotaling & Klenke, for respondent.

VAN WYCK, J. The defendants were about giving an open-air exhibition of their horse show at night, on their uptown grounds, and employed plaintiffs to furnish the electric lights for the exhibition. Plaintiffs' proof shows that the agreement was, first, for them to construct such plant as was necessary to furnish 52 arc electric lights upon these grounds, and to be paid $300 for such construction, and $1.50 per lamp per night; that by mutual consent it was further agreed that the number of lights was to be increased to 92, at the same rate per lamp, and they were to be paid the costs of the construction of such additional plant as was made necessary by this increase; that the cost of constructing this additional plant was $470.63; and that defendants were indebted to them in the sum of $1,996.73, which includes these two items of construction, the price of furnishing the light, and the costs of certain other changes made at defendants' request. The defendants' own evidence shows that these 92 lamps were up and lit during the six nights of the exhibition, for their witness Huidekoper, a director, says, at folio 107: "I was there all the time, almost entirely, during the exhibition, except, sometimes, not in

the morning. I was always there afternoons and evenings. The light was the best that could be done, but not satisfactory,"—and at folio 114: "I suppose they were lit there during the six nights of the exhibition. They went out a great deal, probably half a dozen times or more, for a minute at a time." And Hyde, another one of defendants' directors and witnesses, says, at folio 128: "I don't think it did much more with 92 lights in a place [their exhibition grounds] of that size than to make darkness visible." The defendants did not offer to prove that the 92 lights were not put up or kept lit during the six nights of their exhibition, or that the cost of the plant for the first 52 lights was fixed at $300, or that the reasonable cost of the plant for the 39 or 40 additional lights was $470.63. However, as to this last item, defendants contend that plaintiffs' proof was not sufficient; and it must be admitted that it is quite meager, and could and should have been made more forcible. Still, the evidence of plaintiffs' witness Young, after being very much weakened on his cross-examination, is: "I had charge of the construction while the work was being done there. I know of my own knowledge that every one of these lights were put there. I was up there three nights, and I know that all of the men were employed there that were returned on the pay roll," —and again, at folio 57: "I don't know exactly how much material was used in that thing. I figured it up afterwards. I could not swear to a foot of wire at the time of construction. I knew, at that time, the number of poles used there, but I cannot now recollect." And he swore positively, on direct, that the reasonable cost of putting up the additional 39 or 40 lights was the $470.63. This evidence was not contradicted in any way by defendants' proof; and, moreover, the judge in his charge, without objection or exception from defendants, instructed the jury as follows: "There is but one question for you to determine, and that is, what was the contract between these parties? If the contract was, as is claimed by the electric-light company, that they were to furnish to defendants a certain number of lights and material, and do certain work, why, then your verdict must be for the plaintiff in the sum of $2,102.55," the full amount claimed, with interest. And these instructions are justified by the record, which clearly shows that the only really disputed question on the trial was whether or not the plaintiffs had guarantied that that number of lights would be sufficient for the defendants to give exhibitions at night upon their grounds. This question was hotly disputed, and was determined adversely to defendants by the jury, who were properly instructed in the charge as follows: "The defendants, however, claim that the contract was not only to furnish a certain number of lights, but that the lights should be sufficient to give nightly exhibitions on their grounds; and if you believe that to have been the contract, and that plaintiffs failed to give light sufficient for such exhibitions, why, then your verdict must be for defendants." There was no exception to the charge, and defendants only made one request, which was charged as requested. The plaintiffs certainly forced the record with much evidence which has no proper place in this case, but none of such evidence had any

bearing or weight in the determination of the question as to what the contract between the parties was; and, as all other questions upon which it might have had such bearing or weight were taken away from the jury by the judge's charge not excepted to, an affirmance of the judgment and order, with costs, must follow.   All concur.